# EXHIBIT
# "1"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------X
TORIBIO DE JESUS,

                              Plaintiff,         Index No.: 301460/13

-against-

                                          **AFFIDAVIT**

J & A WINE LIQUOR CORP., PASKAL I, LLC.,
ARISLEYDA DE LA CRUZ and ALMA REALTY CORP.,

                              Defendants.
-----------------------------------------------------------------X

        TORIBIO DEJESUS, being duly sworn, deposes and says:

        I am the plaintiff in the within action.

        I am Spanish speaking and reading, and only understand some English. The following affidavit has been written by me and translated into Spanish and read to me, and I agree with everything in it. The affirmation of my attorney Scott H. Seskin, Esq., has also been translated into Spanish and read to me, and I agree with everything contained within it.

        On November 12, 2012, I was injured when I fell down some stairs leading from the sidewalk in front of 386 East 161st Street, Bronx, New York, to the basement of the building located at 386 East 161st Street, Bronx, New York.

        Before the accident, I was a handyman working with two employees, and I entered into an agreement with J & A WINE LIQUOR CORP., and ARISLEYDA DE LA CRUZ, to install plexiglass in the liquor store they were opening at 386 East 161st Street, Bronx, New York. The plexiglass came delivered on a wooden pallet approximately 10 feet long and 5 feet wide and weighed more than 200 pounds. Manuel Batista, the superintendent of the building and the building Manager, asked me if they could have the pallet once we removed the plexiglass. They requested that

we clear an area in the basement and move the pallet there so they could use it as a shelf to store their paint and supplies, and I agreed.

On the date of the accident, Batista supplied us with rope which we tied around the top, middle and bottom of the pallet to give us something to grab onto. We then moved the pallet down the basement stairs which are located outside the front of the building. I was at the bottom of the pallet walking backwards down the stairs, with my employee Jose Concepcion positioned in the middle of the pallet and my employee Eduardo Bello and Batista were at the top of the pallet, holding onto the rope. While I was walking backwards down the stairs, I slipped on some grease and food which I witnessed leak from garbage brought down to the basement by Batista earlier in the day. Both the me and the pallet went tumbling down the stairs, hitting my body along the way and coming to a rest on my right thumb. I was knocked unconscious and brought up the basement stairs by my employees, and then taken by ambulance to Lincoln Hospital. Due to the accident, I suffered injuries to my right thumb, neck, back and knee and I underwent a cervical fusion, a lumbar fusion and a knee arthroscopy.

Sometime in December after my accident, I went to see Scott Seskin, Esq., who had represented me in the past in a lawsuit that I had. I had also done some small construction work at his home and I knew him personally. I showed him my thumb, and he instructed me to return to Lincoln Hospital because it was infected, and then to see him afterwards. I went to Lincoln, but I did not go back to Mr. Seskin.

Instead, on December 31, 2012, I was brought to Subin & Associates by a person I knew by the name of Jorge, who recommended them to represent me in connection with the accident. After I signed a retainer agreement with Subin, Jorge told me that he received several thousand dollars from Subin for bringing them the case, which he promised to share but never did. I signed with

Subin because I was not working and I needed the money to live on. While I was in Subin's office, I met with individuals who identified themselves as Herb Subin and Eric Subin. I was told by them that in order to accept my case, I would have to sign a separate agreement (Exhibit ""), which was presented to me by and individual who identified himself as "Castillo". The agreement was in both English and Spanish, and called for me to pay $100,000 out of any money received from my case.

Next, Subin's office introduced me to a legal funding company who they said would lend me money against my case. Over the course of more than 2 years, I signed numerous agreements, first with one company and then with another. Sometimes, I received money from the companies which I needed to live, since I was unable to work, and other times, I was told by Subin that they needed me sign agreements to take out money to pay for things in connection with my case, although they never told me exactly what the money was for. Each time, I did what they said and signed whatever they told me to sign because I trusted them. I didn't know or really consider that I was borrowing the money at such a high interest rate because Subin always assured me that my case was worth at least $4 million dollars. I never expected though that I would end up owing over $5 million dollars to the companies.

By March, 2015, I was not seeing any progress in my case. Subin was not responding to my calls and I was not getting any answers to my questions about what was happening with my case, so I decided to return to Mr. Seskin. Before he accepted my case, Mr. Seskin told me that he learned that Subin performed a minimal amount of work, and he agreed to work with me. Shortly thereafter, I was contacted by Subin's office and promised money if I agreed to return. It had been more than 2 years since my accident and I was out of work and desperate for money, so I agreed. However, after I signed a new agreement with Subin, they refused to give me any money so I once again

returned to Mr. Seskin. Mr. Seskin refused to accept me back, however, I begged him and due to our prior relationship and friendship, he agreed.

After Mr. Seskin took charge of my case, I learned why Subin was not returning my calls or letting me know what was happening with my case. I was told that Subin had failed to start a lawsuit against the building's management company who was responsible for the accident, and that it was only a matter of time before papers would have been filed to dismiss my case. I also learned that during the entire time I was Subin's client, Subin had ignored my case and had refused to follow court orders.

Mr. Seskin asked me about my medical treatment and told me that the records showed that payments were by the legal funding companies to people and businesses I had never heard of or received treatment from. For instance, I saw and was told that $30,000.00 was paid at Subin's direction to PSC Liaison Services, LLC, for Physical Therapy and Pain Management as needed for 1 year. I have never heard of PSC Liaison Services, LLC, and I never received physical therapy or pain management from them "as needed" for 1 year. Certainly, if I had known that I had unlimited physical therapy and pain management for 1 year, I would have used it every day. I also learned that $25,000 was paid to Tri-State Medical Liaison Services. Again, I have never heard of this service, and I have never received any medical treatment from it.

During the time I have been with Mr. Seskin, he has always taken my calls or met with me to talk about my case. He is correct, that I called him or stopped by his office weekly or sometimes twice a week because I am in desperate need of money and I need to finish my case. Even now I speak with him several times a week to find out when I can expect to receive the settlement money.

Mr. Seskin took the time to work with me and to locate witnesses to testify to strengthen my case. He also arranged for me to be examined by doctors and other medical providers, who agreed to wait until my case was over to be paid, and he went with me to all of my exams.

During the time I have been with Mr. Seskin, the insurance company for the management company who Subin failed to sue, filed for bankruptcy which further delayed my case and increased the amount of interest I owed to the legal funding company. Then Covid hit, and that further delayed my case. Since I have been in need of money, I had to take out even more loans or borrow from friends to pay my bills. As a result of Subin's failures, I owed more than $5 million to the legal lending company. If Subin had sued the right party and had worked on my case, it would have ended quickly and I would not have owed so much money to the funding company. However, due to the amount of my debt and the uncertainty as to when my case would go to trial, I had no choice but to settle my case for whatever I could get.

I have agreed to write this affidavit because I don't think that Subin should get any money from my case. They made me sign an agreement to pay them $100,000 just to take my case and then they spend more than 2 years refusing to work on it or sue the right party. In fact, I would like compensation from them for the more than 2 years they wasted while they were my attorneys and the $55,000.00 that they directed the legal funding company to pay to PSC Liaison Services, LLC, and Tri-State Medical Liaison Services, for medical treatment that I never received but paid for.

TORIBIO DEJESUS

Sworn to before me, this
26 day of July, 2021

SCOTT H. SESKIN
Notary Public, State of New York
No. 31-4961313
Qualified in New York County
Commission Expires Feb. 5th, 1992 2022

## CERTIFICATION BY TRANSLATOR

Marta Hernandez, being duly sworn, deposes and says: I certify that I am fluent in Spanish and English. Pursuant to CPLR §2101(b), I have translated the attached Affidavit written in English to Spanish for TORIBIO DeJESUS, who acknowledged to me that he fully understood same and affixed his signature to the Affidavit.

_____
MARTA HERNANDEZ

Sworn to before me, this
26th day of July, 2021

_____
SCOTT N. SESKIN
Notary Public, State of New York
No.31-4961313
Qualified in New York County
Commission Expires February 5, 2022

31 diciembre 2012

Subin Associates, LLC
150 Broadway 23 pisos
Nueva York, NY 10038

Esto es para certificar que yo Toribio De Jesus estoy en deuda con Sahiwal Asociados, Inc por los servicios prestados por la suma de $ 100.000

Estoy de acuerdo en que Sahiwal Associates Inc tiene derecho de retención en contra de la parte del producto de mi materia de lesiones personales por el monto total de 100.000 dólares por los servicios prestados a la demanda.

Saludos cordiales

Toribio De Jesus

*[signatures]*

Sworn to before me this
31st day of Dec, 2012

*[signature]*

VIRGINIA I. DELGADO
Notary Public, State of New York
No. 01DE6133022
Qualified in Queens County
Commission Expires September 6, 20 13