UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNION MUTUAL FIRE INSURANCE COMPANY,

Plaintiff,

-against-

SUBIN ASSOCIATES, LLP, *et al.*,

Defendants.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-2652 (OEM) (PCG)

ORELIA E. MERCHANT, United States District Judge:

On May 12, 2025, Union Mutual Fire Insurance Company ("Plaintiff") commenced this civil Racketeer Influenced and Corrupt Organizations Act ("RICO") action by filing a complaint. *See generally* Complaint, Dkt. 1 ("Complaint" or "Compl."). On August 13, 2025, Plaintiff amended its complaint, suing over 60 defendants under RICO, 18 U.S.C. §§ 1962(a), (c)-(d); New York State General Business Law § 349; New York State Judiciary Law § 487; and New York State common law. *See generally* First Amended Complaint ("FAC"). Before the Court are motions to dismiss filed by 16 groups of defendants ("Moving Defendants")[1] and Plaintiff's recently filed motion for leave to file a second amended complaint or supplemental pleading detailing new information relating to the pending motions to dismiss.[2]

For the following reasons, Moving Defendants' Motions to Dismiss are denied in part and granted in part, and Plaintiff's motion for leave to file a second amended complaint or supplemental pleading is denied.

[1] *See* Dkts. 228, 237, 239, 242, 243, 249, 256, 260, 265, 270, 271, 277, 280, 285, 288, 291, 308 ("Moving Defendants' Motions to Dismiss").

[2] *See* Plaintiff's Letter to the Court (June 26, 2026), Dkt. 313.

## BACKGROUND[3]

### A. The Fraud Scheme

Plaintiff, a Vermont-based insurance company, alleges it has been the victim of a sprawling fraud scheme seen before: "stage a fall (or just make it up), overtreat, and sue." FAC ¶ 96. Specifically, Plaintiff asserts that "[f]rom at least 2012 to the present, with a marked escalation since 2020," Defendants, together with others known and unknown, for their financial benefit, orchestrated a widespread scheme to defraud Plaintiff[] and others" in five main ways:

> (i) fraudulently misrepresenting pre-existing and degenerative conditions as acute trauma, transforming legitimate minor or localized injuries into lucrative full-body claims, and otherwise manufacturing purported injuries from whole cloth;
>
> (ii) preparing and collecting documentation as well as submitting, filing, prosecuting and asserting fraudulent personal injury lawsuits on behalf of Claimants, frequently directly related and within short temporal proximity;
>
> (iii) providing or alleging to have provided medically unnecessary and excessive healthcare services to such Claimants;
>
> (iv) providing monies directly or indirectly to Defendants and to Claimants to fund the fraud scheme; and/or
>
> (v) using the fraudulent diagnoses and medically unnecessary and excessive healthcare services to prolong litigation, increase receivables and interest, and inflate or manufacture settlement value.

*Id.* ¶ 214. Plaintiff groups the over 60 defendants[4] into four categories[5]:

---

[3] The following facts are taken from the FAC and assumed to be true for the purposes of resolving the motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)).

[4] Plaintiff's FAC removed certain individuals as named defendants. *See* Order, dated Sep. 15, 2025 (noting the removal of Aylin Martinez, Best Billing & Collection, Inc.; Danny Batista; David R. Capiola, M.D.; Jaime Castillo; Luis Castellano; and Robert Sandell). "Accordingly, those individuals are no longer parties to this action" and are not included in the listed categories. *Id.*

[5] Plaintiff voluntarily dismissed the following Defendants: Wall Street Clerical and Office Services Inc.; Wall Street Calendar Services Inc.; Wall Street Transportation Services, Inc.; Wall Street Investigations Inc.; Walk Street Investigations Inc.; Wall Street Check Cashing Inc.; Amedico Legal Network, LLC, Amedico Holdco, LLC; Corona 55 Funds, Inc.; Corona 55 Inc.; All Boro Medical Rehabilitation PLLC; Kevin H. Weiner, M.D.; and Felix Karafin, M.D. *See* Notice of Voluntary Dismissal Without Prejudice as Against Wall Street Clerical and Office Services, Inc.,

- "Legal Service Defendants" comprise Subin Associates, LLP; Subin & Associates, LLC; Subin, LLP; Eric Subin, PLLC; Herbert S. Subin; Arnold Baum; Eric Subin (collectively, the "Subin Defendants"); Clay M. Evall, Esq., P.C.; Clay M. Evall; Law Offices of Gary S. Park, P.C.; and Gary Park;

- "Runner/Support Defendants" comprise John Doe Runners Nos. 1-25; J. Hernandez Associates, Jr., Inc.; Jose Hernandez; Medical Exam Guardians Inc.; Geraldine DeLeon; Luis F. DeLeon; Jorge Arturo Gonzalez Lupi; J&D Investigation Services Corp.; Amedico Legal, LLC; Amedicolegal Funding, LLC; Marysela K. Salinas; Justicia Inc.; Sahiwal Associates, Inc. (NJ); Sahiwal Associates, Inc. (NY); Tri-State Medical Liaison Services, Inc.; Tanvir Chaudhry; Elsie Real Cibbarelli; and XYZ Support Corporation Nos. 1-25;

- "Funding Defendants" comprise Pegasus Legal Capital, LLC; Pegasus Fund LLC; PSC Liaisons, LLC; Gregory Elefterakis; Case Cash Funding, LLC; Case Cash GP, LLC; Corona 55 Funds, Inc.; Corona 55 Inc.; Wall Street Case Advances Inc.; Neal Magnus; Best Case Originations, LLC; Best Case Originations D, LLC; RL SPV, LLC; and XYZ Funding Corporation Nos. 1-25; and

- "Medical Provider Defendants" comprise Bestcare Physical Therapy and Chiropractic, PC; Maxim Orthopaedics PLLC s/d/b/a Maximum Orthopedics s/d/b/a workerscompensationdrs.com; Maxim Tyorkin, M.D.; RJR Medical P.C.; Urban Heights Medical, PC; Albert J. Ciancimino, M.D.; NY Orthopedics, P.C. s/d/b/a SpineCareNYC; Michael Gerling, M.D.; McCulloch Orthopaedic Surgical Services, P.L.L.C s/d/b/a New York Sports and Joints Orthopaedic Specialists; Kenneth McCulloch-Otero, M.D.; Sanford R. Wert, M.D.; Sanford R. Wert, M.D., PC; Jason M. Gallina, M.D.; Jason M. Gallina, M.D., PC; Kolb Radiology PC; and Thomas Kolb, M.D. *Id.* ¶¶ 4-95.

Plaintiff contends that these defendants recruited claimants who were "often impoverished immigrants, drug addicts, homeless, and otherwise those who have difficulty seeing another path with not just a promised large sum down the line if they play along, but access to money, otherwise unobtainable, within *hours*" ("Claimants"). *Id.* ¶ 99. Plaintiff visualizes this "Fraud Scheme" in the following figure, asserting that, "[a]t the center, and the Enterprise machinery, is the Subin

Wall Street Calendar Services Inc., Wall Street Transportation Services, Inc., Wall Street Investigations Inc., Walk Street Investigations, Inc., Wall Street Check Cashing Inc., Corona 55 Funds Inc. and Corona 55 Inc. Only, Dkt. 181; Order, dated Sep. 22, 2025; Stipulation of Dismissal Without Prejudice, Dkt. 209; Stipulation of Dismissal Without Prejudice as Against All Boro Medical Rehabilitation PLLC, Kevin H. Weiner, M.D., Felix Karafin, M.D. Only, Dkt. 310; Order Dismissing Parties, dated June 22, 2026. Consequently, these Defendants are no longer parties to this action and are not included in the listed categories.

Firm," *id.* ¶ 110, comprising Defendants Eric Subin, PLLC; Subin Associates, LLP; Subin & Associates, LLC; and Subin, LLP., *id.* ¶ 7:




*id.* ¶ 215, Figure 2.

Plaintiff provides an overview of the innerworkings of the alleged scheme, *id.* ¶¶ 96-232, bolstered by "eight exemplar cases brought by Subin which are part of the Fraud Scheme, and which have directly damaged Plaintiff," *id.* ¶ 233; *see id.* ¶¶ 233-435. As "an insurance carrier, which underwrites policies that cover the various claims and lawsuits filed by Claimants and the Legal Defendants, with the necessary and substantial assistance of the Medical Defendants, the Runner Defendants, and the Funding Defendants," *id.* ¶ 439, Plaintiff claims that it "has incurred substantial damages," including "the payments that Plaintiff made to Legal Defendants in the form

of settlements due to Defendant's pattern of fraudulent conduct" and "payments Plaintiff made as legal and investigative costs for defending fraudulent lawsuits and/or for reimbursement for payments made as part of settlement[s,] which were diverted to Defendant Medical Providers through liens for treatment predicated upon, in whole or in part, the fraudulent reports generated by Defendants," *id.* ¶ 440.

### B. Procedural History

On May 12, 2025, Plaintiff commenced this action, *see generally* Compl., and on August 13, 2025, Plaintiff filed its FAC, asserting eight causes of action:

> (1) violation of RICO § 1962(c) against Subin Associates, LLP; Neal Magnus; All Boro Medical Rehabilitation PLLC; Kevin H. Weiner, M.D.; Felix Karafin, M.D.; NY Orthopedics, P.C. s/d/b/a SpineCareNYC; Michael Gerling, M.D.; McCulloch Orthopaedic Surgical Services, P.L.L.C. s/d/b/a New York Sports and Joints Orthopaedic Specialists; Kenneth McCulloch-Otero, M.D.; Kolb Radiology PC; and Thomas Kolb, M.D.;
>
> (2) violation of RICO § 1962(d) against all Defendants;
>
> (3) violation of RICO § 1962(a) against the "Best Case and Pegasus Defendants";
>
> (4) common law fraud against the Legal Service Defendants and Medical Provider Defendants;
>
> (5) aiding and abetting fraud against all Defendants;
>
> (6) unjust enrichment against the Legal Service Defendants and Medical Provider Defendants;
>
> (7) violation of New York State General Business Law § 349 against the Legal Service Defendants, Medical Provider Defendants, and Funding Defendants; and
>
> (8) violation of New York State Judiciary Law § 487 against the Subin Defendants.

FAC ¶¶ 445-524. Plaintiff seeks monetary damages, injunctive relief, attorneys' fees and costs, and any other relief as the Court deems just and proper. *Id.* ¶¶ 452, 461, 476, 491, 497, 504, 515, 524.

On September 26, 2025, Defendants Jason M. Gallina, M.D., and Jason M. Gallina, M.D. PC, filed an answer to the FAC. *See* Answer, Dkt. 189; Answer, Dkt. 190.

The remaining Defendants requested a pre-motion conference on anticipated motions to dismiss the FAC, which the Court denied, opting instead to set briefing schedules. *See* Orders, dated Sep. 4, 2025; Order, dated Sep. 8, 2025; Order, Dkt. 170; Order, dated Sep. 16, 2025; Order, dated Sep. 22, 2025; Orders, dated Sep. 26, 2025; Orders, dated Sep. 29, 2025; Order, dated Oct. 2, 2025; Order, dated Oct. 6, 2025; Order, dated Oct. 8, 2025. Pursuant to those briefing schedules, fully briefed motions to dismiss were filed on November 17, 2025, and December 16, 2025.[6]

---

[6] Of the 17 motions to dismiss filed, one was a joint motion, in which 15 groups of Defendants joined. *See generally* Joint Memorandum of Law in Support of Moving Defendants' Motions to Dismiss, Dkt. 277 ("Joint Motion" or "Joint Mot."); Plaintiff Union Mutual Fire Insurance Company's Memorandum of Law in Opposition to Defendants' Joint Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), Dkt. 279 ("Joint Motion Opposition" or "Joint Mot. Opp'n"); Joint Reply Memorandum of Law in Further Support of Moving Defendants' Motions to Dismiss, Dkt. 281 ("Joint Reply").

The 15 groups of Defendants joining the Joint Motion additionally filed supplemental briefs: (1) the Subin Defendants, *see generally* Dkt. 272; Dkt. 275; Dkt. 276; (2) Jose Hernandez; Jose Hernandez Associates Jr., Inc.; Medical Exam Guardians Inc.; Justicia Inc.; and Wall Street Case Advances Inc., *see generally* Dkt. 288-1; Dkt. 289; Dkt. 290; (3) Tanvir Chaudhry; Sahiwal Associates, Inc. (NJ); Tri-State Medical Liaison Services, Inc.; Michael Gerling, M.D.; and NY Orthopedics P.C. s/d/b/a SpineCareNYC, *see generally* Dkt. 280-1; Dkt. 282; Dkt. 283; Dkt. 236; (4) Maxim Tyorkin, M.D.; Maxim Orthopaedics, PLLC s/d/b/a Maximum Orthopedics s/d/b/a workersconmpensationdrs.com; Bestcare Physical Therapy and Chiropractic, PC; RJR Medical PC, Urban Heights Medical PC; and Albert J. Ciancimino, M.D, *see generally* Dkt. 237; Dkt. 261; Dkt. 238; (5) Elsie Real Cibbarelli and Sahiwal Associates, Inc. (NY), *see generally* Dkt. 291-2; Dkt. 292; Dkt. 293; (6) McCulloch Orthopaedic Surgical Services and Kenneth McCulloch-Otero, M.D, *see generally* Dkt. 239; Dkt. 240; Dkt. 241; (7) Best Case Originations, LLC; Best Case Originations D, LLC; RL SPV, LLC; and Neal Magnus, *see generally* Dkt. 285-1; Dkt. 286; Dkt. 287; (8) Sanford Wert, M.D. and Sanford Wert, M.D., P.C, *see generally* Dkt. 249; Dkt. 250; Dkt. 252; (9) Clay M. Evall, Esq. P.C and Clay M. Evall, *see generally* Dkt. 247; Dkt. 253; Dkt. 278; (10) Pegasus Legal Capital LLC and Pegasus Legal Fund LLC, *see generally* Dkt. 242; Dkt. 248; Dkt. 244; (11) Geraldine Deleon and Luis F. Deleon, *see generally* Dkt. 271-1; Dkt. 273; Dkt. 274; (12) Kolb Radiology, P.C. and Thomas Kolb, M.D., *see generally* Dkt. 257; Dkt. 258; Dkt. 259; (13) All Boro Medical Rehabilitation, PLLC; Kevin Weiner, M.D.; and Felix Karafin, M.D., *see generally* Dkt. 266; Dkt. 267; Dkt. 268; (14) CaseCash Funding, LLC; Gregory Elefterakis; and PSC Liaisons, LLC, *see generally* Dkt. 262; Dkt. 263; Dkt. 264; (15) Jorge Arturo Gonzalez Lupi; J & D Investigation Services Corp.; Amedico Legal, LLC; Amedicolegal Funding, LLC; Marysela K. Salinas; and M.K.S Consultants Inc. d/b/a Latinos Legal Connections, *see generally* Dkt. 295; Dkt. 294; Dkt. 308.

Defendants Gary S. Park and the Law Offices of Gary S. Park, P.C., did not join the Joint Motion and, instead, filed a separate motion to dismiss. *See* Defendants Gary S. Park & Law Offices of Gary S. Park, P.C. Memorandum of Law in Support of Motion to Dismiss, Dkt. 229 ("Park Mot."); Plaintiff Union Mutual Fire Insurance Company's Memorandum of Law in Opposition to Defendants Gary S. Park & Law Offices of Gary S. Park, P.C.'s Motion to Dismiss, Dkt. 231 ("Park Opp'n"); Defendants Gary S. Park & Law Offices of Gary S. Park, P.C. Reply Memorandum of Law in Support of Motion to Dismiss, Dkt. 230 ("Park Reply").

Since Plaintiff dismissed its claims against All Boro Medical Rehabilitation, PLLC; Kevin Weiner, M.D.; and Felix Karafin, M.D., *see* Stipulation of Dismissal Without Prejudice as Against All Boro Medical Rehabilitation PLLC,

On March 23, 2026, Plaintiff filed a letter notifying the Court of supplemental authority relevant to the pending motions to dismiss. *See* Plaintiff's Letter to the Court (Mar. 23, 2026), Dkt. 304. The following day, Moving Defendants urged the Court not to consider the letter to the extent that it contained argumentation or to alternatively grant them leave to respond. *See* Moving Defendants' Letter to the Court (Mar. 24, 2026), Dkt. 305. On March 26, 2026, the Court granted Moving Defendants' request for leave to submit a joint responsive letter. *See* Order, dated Mar. 26, 2026. Moving Defendants filed a letter response on April 7, 2026. *See* Moving Defendants' Letter to the Court (Apr. 7, 2026), Dkt. 306.

On June 19, 2026, Plaintiff sought leave to file a second amended complaint or supplemental pleading. *See generally* Plaintiff's Letter to the Court (June 19, 2026), Dkt. 311. However, on June 26, 2026, Plaintiff filed a letter requesting to withdraw the June 19, 2026, letter following a dispute with Defendant Jose Hernandez. *See generally* Plaintiff's Letter to the Court (June 26, 2026), Dkt. 312. Instead, Plaintiff filed a replacement letter, addressing Defendant Jose Hernandez's concerns about the June 19, 2026, letter and again requesting leave to file a second amended complaint or supplemental pleading. *See generally* Plaintiff's Letter to the Court (June 26, 2026), Dkt. 313. On June 26, 2026, Moving Defendants filed a response. *See* Moving Defendants' Letter to the Court (June 26, 2026), Dkt. 314.

On July 22, 2026, Plaintiff filed another supplemental authority letter, *see* Plaintiff's Letter to the Court (July 22, 2026), Dkt. 315, which Moving Defendants responded to on July 27, 2026, *see* Moving Defendants' Letter to the Court (July 27, 2026), Dkt. 316.

---

Kevin H. Weiner, M.D., Felix Karafin, M.D. Only, Dkt. 310; Order Dismissing Parties, dated June 22, 2026, the arguments raised in their supplemental briefs are now moot.

## LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Challenges to a plaintiff's standing implicate the Court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016). Rule 12(b)(1) requires a district court to dismiss an action for lack of subject-matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Green v. Dep't of Educ.*, 16 F.4th 1070, 1075 (2d Cir. 2021) (per curiam) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Carter*, 822 F.3d at 56. Where a challenge to a plaintiff's standing is "facial," in other words, "based solely on the allegations of the complaint or the complaint and exhibits attached to it," *Carter*, 822 F.3d at 56, as is the case here, *see generally, e.g.*, Joint Mot.; Joint Reply, "the plaintiff has no evidentiary burden" and the "task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Carter*, 822 F.3d at 56 (alteration in original) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). The Court accepts as true all material allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Id.* at 57.

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") requires a district court to dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). While a complaint need not contain "detailed factual allegations" it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557). When resolving a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations contained within the four corners of a complaint. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998).

For RICO claims, in particular, to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must offer 'more than labels and conclusions' in pleading the non-fraud elements" and must meet the heightened particularity requirement of Federal Rule of Civil Procedure 9(b) when pleading "predicate acts sounding in fraud or mistake." *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

Where a defendant seeks dismissal under both Rule 12(b)(1) and Rule 12(b)(6), courts must consider the Rule 12(b)(1) motion first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, 'the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" (citations omitted) (quoting 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1350 (1969))).

## DISCUSSION

Moving Defendants challenge the FAC on two main bases: (1) standing, *see* Joint Mot. at 1-9, and (2) the sufficiency of its allegations, *see id.* at 9-30.

### A. Plaintiff Has Constitutional Standing to Sue.

First, Moving Defendants argue that Plaintiff "lacks both constitutional and statutory standing to assert its RICO claims" and that Plaintiff's "alleged injuries are too remote and attenuated to satisfy the requisite causation standard, as none of the asserted injuries were proximately caused by any Defendants." *Id.* at 1; *see also id.* at 1-9. Plaintiff responds that it has properly alleged standing. Joint Mot. Opp'n at 4-11.

The Court begins with constitutional standing.[7] To establish constitutional standing, a plaintiff must show three things: (1) an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical,'" (2) a "causal connection between the injury and the conduct complained of" such that the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] independent action of some third party not before the court," and (3) redressability, in other words, that the "it must be 'likely,' as

[7] While Moving Defendants raise the issue of constitutional standing, the parties' respective standing arguments focus on statutory, rather than constitutional, standing. *See, e.g.*, Joint Mot. at 1-9; Joint Mot. Opp'n at 4-11. However, the Court begins with constitutional standing before turning to statutory standing because constitutional standing "imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank* AG, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Although also commonly referred to as "standing," "[u]nlike Article III standing, RICO 'standing' is not a jurisdictional requirement but instead concerns a merits issue, i.e., whether the RICO statute gave the plaintiff a cause of action." *Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 133 n.1 (2d Cir. 2023); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129 (2d Cir. 2003) ("In sum, despite describing the proximate causation requirement as 'RICO standing,' such standing is not jurisdictional in nature under Fed.R.Civ.P. 12(b)(1), but is rather an element of the merits addressed under a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim."), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014), *as recognized in Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016). "RICO standing is a more rigorous matter than standing under Article III." *Denney*, 443 F.3d at 266.

opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (alterations in original) (first quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); then quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 41-42 (1976)). "Since the elements of Article III standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Carter*, 822 F.3d at 56 (quoting *Lujan*, 504 U.S. at 561). On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan*, 504 U.S. at 561).

Plaintiff meets these requirements. First, Plaintiff has stated an injury in fact. "Any monetary loss suffered by the plaintiff satisfies the injury-in-fact element," as does a "liability, including a contingent liability." *Chevron Corp. v. Donziger*, 833 F.3d 74, 120 (2d Cir. 2016) (collecting cases). Here, Plaintiff alleges that, as "an insurance carrier, which underwrites policies that cover the various claims and lawsuits filed by Claimants and the Legal Defendants, with the necessary and substantial assistance of the Medical Defendants, the Runner Defendants, and the Funding Defendants," FAC ¶ 439, Plaintiff "has incurred substantial damages," including "the payments that Plaintiff made to Legal Defendants in the form of settlements due to Defendant's pattern of fraudulent conduct" and "payments Plaintiff made as legal and investigative costs for defending fraudulent lawsuits and/or for reimbursement for payments made as part of settlement[s,] which were diverted to Defendant Medical Providers through liens for treatment predicated upon, in whole or in part, the fraudulent reports generated by Defendants," *id.* ¶ 440;

*see id.* ¶¶ 442-44. Taken as true at this stage in the litigation, such allegations suffice to state an injury in fact for the purposes of constitutional standing. *See, e.g.*, *Roosevelt Rd. Re, Ltd. v. Haggar*, 24-CV-1549 (NG)(CHK), 2026 WL 682192, at *6 (E.D.N.Y. Mar. 11, 2026) (determining, in a civil RICO action alleging a similar scheme, that a plaintiff had adequately alleged injury in fact by stating that it had incurred "unwarranted 'expenses paid as reimbursement to primary insurers providing coverage for the claims and lawsuits filed and/or prosecuted by the Legal [Services] Defendants on behalf of Claimants'" (citation omitted)).[8]

Second, Plaintiff's injury is fairly traceable to the challenged actions of Defendants. To establish traceability, a "plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury.' The fact that the defendant's conduct may be only an 'indirect[ ]' cause is 'not necessarily fatal to [constitutional] standing.'" *Chevron Corp.*, 833 F.3d at 121 (first alteration in original) (first quoting *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013); and then quoting *Simon*, 426 U.S. at 44). Here, Plaintiffs state:

> But for Defendants' perpetration of the Fraud Scheme, Plaintiff would not have incurred such damages. Each and every predicate act contributed to the damages incurred, as the scheme is designed [to] reinforce itself, becoming more difficult to discern, more expensive to combat, and more effective generally upon each subsequent production of false statements and documents, effectuated through the use or mail and wire communication, and through reinvestment in the scheme and iteration, in an ever-escalating bootstrap; damages would have lessened or not incurred at all but for fraudulent scheme.

[8] Moving Defendants argue that, to the extent Plaintiff asserts "hypothetical expenses attributed merely to 'litigation,'" such expenses are "insufficient to confer standing." Joint Mot. at 8. In doing so, they rely on *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024), which observed that "an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct." *See* Joint Mot. at 8-9 (quoting *All. for Hippocratic Med.*, 602 U.S. at 394). That case, however, is factually distinct from the matter at bar: there, the Supreme Court held that the plaintiff medical organizations lacked standing to challenge the Food and Drug Administration's ("FDA") regulation of the abortion drug mifepristone in part because the plaintiffs failed to assert a concrete injury. *All. for Hippocratic Med.*, 602 U.S. at 394-97. Notably, the plaintiff organizations did not prescribe or use the challenged drug; rather, they were ideologically opposed entities who sought to challenge the use by others. *Id.* at 373-74. Here, by contrast, Plaintiff alleges it suffered monetary loss because of Defendants' unlawful conduct. *See* FAC ¶ 440.

FAC ¶ 441. Taken as true on a motion to dismiss, this allegation establishes traceability for the purposes of constitutional standing. *See, e.g.*, *Haggar*, 2026 WL 682192, at *6 (determining, in a civil RICO action alleging a similar scheme, that a plaintiff had alleged fairly traceable injuries where it stated that "[b]ut for Defendants' perpetration of the Fraud Scheme, [the plaintiff's] expenses paid as reimbursement to primary insurers would be less because the Claimants' injuries, if any, would be less severe and the medical services necessary to treat any accident-related injury, if any, would [be] less significant, resulting in lower settlement value of such claims and lawsuits and thus, less litigation expenses").

Last, Plaintiff's injury is redressable. "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021). Simply put, this factor focuses on whether a plaintiff has shown that a decision in his favor would relieve his injury. *Chevron Corp.*, 833 F.3d at 121. Here, Plaintiff seeks monetary and injunctive relief. *See* FAC ¶¶ 461, 476, 491, 497, 504, 515, 524. It is evident that, were Plaintiff to succeed, its injuries would be remedied by compensation for its losses and an injunction preventing Defendants from continuing the alleged harmful activity. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987) ("[RICO is] designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees."); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481-82 (1985) ("The statute's 'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity."); *see, e.g.*, *Chevron Corp.*, 833 F.3d at 123 (finding redressability met in a civil RICO case in which the plaintiff requested injunctive relief: "[a]nd plainly the injunctive relief requested would have protected [the plaintiff] against the enforcement of such a judgment").

Thus, Plaintiff has adequately alleged constitutional standing to sue. Accordingly, Moving Defendants' motion to dismiss the FAC under Rule 12(b)(1) is denied.

**B. Plaintiff Fails to Plausibly State Claims for Relief.**

Next, Moving Defendants contend that Plaintiff's eight causes of action fail to state claims upon which relief can be granted under Rule 12(b)(6).[9] In opposition, Plaintiff asserts that it has plausibly alleged claims for relief.[10] The Court addresses each cause of action in turn.

**1. Plaintiff Has Failed to State Claims Under 18 U.S.C. §§ 1962(a),(c), and (d).**

Moving Defendants attack the plausibility of Plaintiff's RICO causes of action, focusing especially on statutory standing. Joint Mot. at 1-18; Pegasus Suppl. Mot. at 5-17; Best Case Suppl. Mot. at 5-20; McCulloch Suppl. Mot. at 5-22; Park Mot. at 11-16. In opposition, Plaintiff asserts that it has satisfied statutory standing and otherwise has adequately stated claims. Joint Mot. Opp'n at 15-24; Pegasus Opp'n at 9-16; Best Case Opp'n at 12-17; McCulloch Opp'n at 6-17; Park Opp'n at 10-22. Having reviewed the parties' briefs, the Court determines that Plaintiff fails to state a claim for each RICO violation alleged in the FAC primarily due to a lack of statutory standing.

---

[9] *See, e.g.*, Joint Mot. at 2-30; Supplemental Memorandum of Law in Support of Motion to Dismiss on Behalf of Pegasus Legal Capital, LLC and Pegasus Fund LLC at 5-17, Dkt. 242 ("Pegasus Suppl. Mot."); Defendants' Best Case Originations, LLC, Best Case Originations D, LLC, RL SPV, LLC and Neal Magnus Memorandum of Law in Support of Motion to Dismiss Plaintiff's First Amended Complaint at 18-20, Dkt. 285-1 ("Best Case Suppl. Mot."); Individual Memorandum of Law in Support of Motion to Dismiss on Behalf of Herbert S. Subin, Eric Subin, Arnold Baum, Subin Associates, LLP, Subin & Associates, LLC, Subin, LLP and Eric Subin, PLLC at 4-20, Dkt.272 ("Subin Suppl. Mot."); Memorandum of Law in Support of McCulloch Orthopaedic Surgical Services, P.L.L.C. and Kenneth McCulloch-Otero, M.D.'s Motion to Dismiss at 5-25, Dkt. 239 ("McCulloch Suppl. Mot."); Park Mot. at 11-16.

[10] *See* Opp'n at 11-30; Plaintiff Union Mutual Fire Insurance Company's Memorandum of Law in Opposition to Pegasus Defendants' Individual Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6) at 9-16, Dkt. 248 ("Pegasus Opp'n"); Plaintiff Union Mutual Fire Insurance Company's Memorandum of Law in Opposition to Best Case Defendants' Individual Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6) at 12-17, Dkt. 286 ("Best Case Opp'n"); Plaintiff Union Mutual Fire Insurance Company's Memorandum of Law in Opposition to Subin Defendants' Individual Motion to Dismiss at 6-23, Dkt. 275 ("Subin Opp'n"); Plaintiff Union Mutual Fire Insurance Company's Memorandum of Law in Opposition to the McCulloch Orthopaedic Surgical Services, P.L.L.C. and Kenneth McCulloch-Otero, M.D.'s Individual Memorandum of Law in Support of Motion to Dismiss at 6-21, Dkt. 240 ("McCulloch Opp'n"); Park Opp'n at 10-22.

U.S. Code title 18, section 1964(c), creates a private cause of action for "[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (emphasis added); *see Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018). Section 1962, in turn, prohibits a variety of activity. Relevant here, the statute makes it unlawful for:

> (a) . . . any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .
>
> (c) . . . any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) . . . any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Interpreting these provisions, the Supreme Court and Second Circuit have required "RICO standing," among other elements, when stating a claim for relief under 18 U.S.C. § 1962(a) ("Section 1962(a)"), 18 U.S.C. § 1962(c) ("Section 1962(c)"), and 18 U.S.C. § 1962(d) ("Section 1962(d)"). *See, e.g.*, *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 321 (2d Cir. 2011) (involving a violation of Section 1962(a)); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (plurality opinion) (involving a violation of Section 1962(c)); *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) (involving a violation of Section 1962(d)). "A RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]' and only when his or her 'actual loss becomes clear and definite.'" *Denney*, 443 F.3d at 266. Put another way, RICO standing requires a showing of causation and clear-and-definite injury.

**a. Causation**

To establish causation, a plaintiff must plausibly allege that a "RICO predicate offense 'not only was a "but for" cause of [the] injury, but was the proximate cause as well.'" *Hemi*, 559 U.S. at 9 (plurality opinion) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). "Proximate cause for RICO purposes . . . requires 'some *direct* relation between the injury asserted and the injurious conduct alleged.'" *Id.* (emphasis added) (quoting *Holmes*, 503 U.S. at 268); *accord Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025). A connection "that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi*, 559 U.S. at 9 (alteration in original) (quoting *Holmes*, 503 U.S. at 271, 274).

Here, Plaintiff's injury is indirect. Plaintiff articulates five main ways that the Fraud Scheme operated:

> (i) fraudulently misrepresenting pre-existing and degenerative conditions as acute trauma, transforming legitimate minor or localized injuries into lucrative full-body claims, and otherwise manufacturing purported injuries from whole cloth;
>
> (ii) preparing and collecting documentation as well as submitting, filing, prosecuting and asserting fraudulent personal injury lawsuits on behalf of Claimants, frequently directly related and within short temporal proximity;
>
> (iii) providing or alleging to have provided medically unnecessary and excessive healthcare services to such Claimants;
>
> (iv) providing monies directly or indirectly to Defendants and to Claimants to fund the fraud scheme; and/or
>
> (v) using the fraudulent diagnoses and medically unnecessary and excessive healthcare services to prolong litigation, increase receivables and interest, and inflate or manufacture settlement value.

FAC ¶ 214. Relevant to Section 1962(a), Plaintiff alleges an improper investment or use of the proceeds of the pattern of racketeering activity. *Id.* ¶¶ 462-76; *see Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990) ("[A] plaintiff must allege injury from the defendant's investment of the racketeering income to recover under § 1962(a)."); *accord Ideal Steel*, 652 F.3d at 321.

Relevant to Section 1962(c) and Section 1962(d), Plaintiff asserts that this conduct comprises five predicate acts: mail fraud, wire fraud, bribing a witness, money laundering, and violations of the Travel Act. *Id.* ¶¶ 450, 455.

Plaintiff defines itself as an "insurance carrier which underwrites policies that cover the various claims and lawsuits" purportedly brought "as part of the Fraud Scheme," FAC ¶ 439; however, nowhere in its thousand-page-long FAC does Plaintiff state that it "is an insurance carrier that underwrites insurance policies covering the *property owners* who were sued in the underlying personal injury lawsuits," Joint Mot. at 2-3 (emphasis added); *see* Joint Mot. Opp'n at 4 (not disputing the Moving Defendants' characterization of it as such). As such, Plaintiff is at least two steps beyond the alleged racketeering activity, unlike Claimants, who were allegedly recruited by the Runner/Support Defendants to undergo unnecessary medical procedures performed by the Medical Provider Defendants on the promise of money loaned to them at "usurious" rates by the Funding Defendants, or the property owners, who were named as defendants in the allegedly fraudulent suits brought by the Legal Service Defendants, FAC ¶¶ 99-100; *see id.* ¶¶ 235-435 (noting that each named Claimant suffered trip-and-fall or similar accidents); *see also, e.g.*, *Haggar*, 2026 WL 682192, at *11 (acknowledging, in a suit involving reinsurers allegedly victimized by a similar scheme, that "the allegedly fraudulent conduct first resulted in workers' compensation claims against the Claimants' employers and/or personal injury lawsuits pursuant to New York's Labor Law against contractors or property owners (the first step). The employers and/or contractors and/or property owners then filed insurance claims with their workers' compensation or general liability carriers (the second step), which paid the claims and sought reimbursement from their reinsurer, Roosevelt (the third step)"); *Roosevelt Rd. Re, Ltd. v. Subin*, 24-CV-05033 (HG), 2025 WL 1713109, at *6 (E.D.N.Y. June 19, 2025) (finding, in a case alleging

a similar scheme involving reinsurers and some of the same defendants as those named here, that no direct causation existed), *aff'd*, 25-2560, 2026 WL 2108399 (2d Cir. July 22, 2026). The Supreme Court has long established that such attenuation is not enough. *Holmes*, 503 U.S. at 272 (cautioning courts "not to go beyond the first step" causally in civil RICO actions (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983))); *see also Roosevelt Rd. Re, Ltd. v. Subin*, 25-2560, 2026 WL 2108399, at *3 (2d Cir. July 22, 2026) ("While Plaintiffs allege a disturbing pattern of fraud, RICO does not create a universal cause of action that permits parties to turn state-law claims – which Plaintiffs also asserted here – into federal suits seeking treble damages.").

*Holmes v. Securities Investor Protection Corp.* is instructive. In *Holmes*, plaintiff Securities Investor Protection Corp. ("SIPC")

> had a duty to reimburse customers of certain registered broker-dealers in the event the broker-dealers were unable to meet their financial obligations. When the conspiracy by the stock manipulators was detected, stock prices collapsed, and two broker-dealers were unable to meet their obligations to their customers. SIPC, as insurer against that loss, ultimately was on the hook for nearly $13 million to cover the customers' claims. The Court held that SIPC could not recover against the conspirators because it could not establish that it was injured "by reason of" the alleged fraud, as that phrase is used in RICO.

*Hemi*, 559 U.S. at 8-9 (citing *Holmes*, 503 U.S. at 261); *see Holmes*, 503 U.S. at 261-63. Similarly, here, Plaintiff insured the property owners, who were allegedly liable to Claimants.

Further, the Supreme Court noted that directness is often beneficial for three reasons: (1) because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"; (2) "apart from problems of providing factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple

recoveries"; and (3) "the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." 503 U.S. at 269-70.

All of these principles are at play here. It is hard to determine the extent to which Claimants' injuries were the result of the alleged racketeering, as opposed to other causes, for example, the "poor business practices" of the property owners. *Holmes*, 503 U.S. at 273. Assuming that could be discerned, however, the Court would then need to be able to apportion potential recoveries by Claimants and the property owners. *Id.* Claimants would also arguably be better situated to sue for the purported misrepresentation of their medical conditions, unnecessary medical treatments, and "usurious" litigation funding, FAC ¶¶ 99-100, and the property owners themselves would similarly be better positioned to sue for the alleged fraudulent litigation against them. *See Holmes*, 503 U.S. at 273.

Plaintiff argues that *Holmes* is distinguishable because Plaintiff has a duty to defend its insureds under New York law. *See* Joint Opp'n at 4-11. However, Plaintiff does not cite a single case holding that an insurer's duty to defend establishes direct causation in the RICO context, nor is the Court aware of one. *Forefront Mgmt., LLC v. Vergilis-Kalner*, 24-cv-8189 (LAK), 2025 WL 1222648 (S.D.N.Y. Apr. 24, 2025), which Plaintiff cites for the proposition that "a RICO cause of action extends to all directly injured parties, not just the most directly injured among them," Joint Opp'n at 4 (quoting *Forefront Mgmt.*, 2025 WL 1222648, at *2); *see* Joint Opp'n at 9-10, is inapt. There, the plaintiff purchased a dermatology practice and related assets, which it alleged were sold to them at an inflated price that was the result of a racketeering scheme to defraud patients and insurance companies. *Forefront Mgmt.*, 2025 WL 1222648, at *1. Plaintiff was not

an insurer and did not raise an insurer's duty to defend. Ultimately, the court did find that direct causation existed because "every additional dollar of fraudulently obtained income necessarily increased the purchase price for [the practice's] assets, which was calculated based on a multiple of [the practice's] adjusted net income." *Id.* at *4. Here, however, Plaintiff asserts no comparable direct harm.

*Allstate Insurance v. Lyons*, 843 F. Supp. 2d 358 (E.D.N.Y. 2012), which Plaintiff additionally cites, Joint Opp'n at 9, does not alter this conclusion. There, Allstate, an automobile insurance company, sued a group of medical providers, medical practices, and their owners for RICO violations, among other causes of action, arising out of an alleged "conspiracy to defraud Allstate for benefits under [New York's No-Fault Insurance Law]." *Allstate Ins.*, 843 F. Supp. 2d at 365-66. Under New York's No-Fault Insurance Law,

> automobile insurance providers are required to include in their policies coverage for injuries arising from car accidents, irrespective of who is to blame for the accident. The no-fault scheme thus "supplant[s] the state's common law tort remedies for most injuries associated with automobile accidents." The law requires car insurance providers to reimburse injured persons for "basic economic loss," including medical expenses, and it sets forth a schedule of permissible charges for specific services. An injured person who seeks medical treatment may assign her right to no-fault benefits to her medical provider, and such assignment is typical.

*Id.* at 365-66 (citations omitted) (quoting *State Farm Mut. Auto. Ins. v. Mallela*, 372 F.3d 500, 502 (2d Cir. 2004)). In *Allstate*, the injured claimants accordingly assigned their rights to no-fault benefits to their medical providers, who misrepresented to Allstate "that [they] were eligible to receive reimbursement under the no-fault law" and submitted fraudulent claims to Allstate "for services purportedly provided . . . that were not medically necessary or compensable." *Id.* at 373. Here, by contrast, the alleged injury is more removed: rather than directly defrauding Plaintiff via

the submission of fraudulent claims, Defendants have purportedly defrauded Claimants and the owners of the properties where Claimants fell, whom Plaintiff insures.[11]

Furthermore, Plaintiff's additional causation arguments fail. To the extent that Plaintiff advances a subrogation argument (in other words, that it stands in the shoes of its insureds), *see* Joint Mot. Opp'n at 7-8, the *Holmes* Court explicitly stated that subrogation does not suffice, *Holmes*, 503 U.S. at 270-71 (Even assuming that the plaintiff's subrogation argument was not "fraught with unanswered questions," the Supreme Court found the link to be "too remote" and "purely contingent on the harm suffered by the broker-dealers," who the plaintiff was, in turn, obligated to insure.); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (discussing how the *Holmes* Court "concluded that even if SIPC were subrogated to the rights of certain aggrieved customers, the RICO claims could not satisfy the requirement of directness"). To the extent that Plaintiff argues it was the foreseeable target of the alleged racketeering, *see* Joint Mot. Opp'n at 13, the requirement of direct causation is more demanding. *Hemi*, 559 U.S. at 12-13 ("The concepts of direct relationship and foreseeability are of course two of the 'many shapes [proximate cause] took at common law.' Our precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm. Indeed, *Anza* and

[11] Similarly, in another recent insurance case, *Government Employees Insurance v. Landow*, 21-CV-1440 (NGG) (RER), 2022 WL 939717, at *1 (E.D.N.Y. Mar. 29, 2022), GEICO, an automobile insurer, brought a RICO action against several medical providers alleging that they had defrauded GEICO "by submitting thousands of fraudulent bills for no-fault insurance charges." As in *Allstate*, the defendants directly submitted fraudulent claims to GEICO, and the court held that the plaintiffs had plausibly alleged direct causation. *Id.* at *6-7.

*State Farm Mutual Automobile Insurance v. Tri-Borough NY Medical Practice P.C.*, 120 F.4th 59 (2d Cir. 2024), which Plaintiff cites for the proposition that plaintiffs in cases such as these have been "virtually *universally* found to have standing" and "have created serious questions going to the merits sufficient to stay the underlying arbitrations and collections actions associated with the claimed schemes," Joint Mot. Opp'n at 9, furthers this point. There, too, automobile insurers had sued health-care providers and related persons in an alleged fraudulent billing scheme under New York's No-Fault Insurance Law. 120 F.4th at 70. The Court does not disagree that insurers may generally have statutory standing in civil RICO actions; but the insurance cases upon which Plaintiff relies are distinct from the facts at issue here. *See also Haggar*, 2026 WL 682192, at *13 (interpreting these cases similarly in a case involving a similar fraud scheme and reinsurers).

*Holmes* never even mention the concept of foreseeability." (alteration in original) (quoting *Holmes*, 503 U.S. at 268)); *Anza*, 547 U.S. at 460-61 (noting that a plaintiff "cannot circumvent the proximate-cause requirement" by making claims about the defendant's intent); *Horn*, 604 U.S. at 612 ("The key word is 'direct'; foreseeability does not cut it."). Nor does the Supreme Court consider a RICO defendant's intent, *see* Joint Mot. Opp'n at 8, 12-13, as a factor in this analysis, *Hemi*, 559 U.S. at 13 & n.1; *see also Empire Merchs.*, 902 F.3d at 145 ("[F]orseeability and intention have little to no import for RICO's proximate cause test.").

Moreover, though Plaintiff asserts that "the vast majority of the predicate acts alleged in Count I of the FAC were post-duty to defend, and post-CPLR § 3101(f) disclosure of carrier identity, and caused direct harm to Plaintiff, without any intermediary," Joint Mot. Opp'n at 11, this is a legal conclusion. It is not plausibly supported by facts asserted in the FAC and is premised on the same causation theory discussed above. *See id.* at 4-11.[12]

[12] Plaintiff cites additional cases, *see* Joint Mot. Opp'n at 4-5; Plaintiff's Letter to the Court (Mar. 23, 2026), Dkt. 304, Plaintiff's Letter to the Court (July 22, 2026), Dkt. 315, none of which alters this analysis. *Town of Massena v. Healthcare Underwriters Mutual Insurance*, 779 N.E.2d 167 (N.Y. 2002), merely supports the notion that an insurer has a duty to defend its insureds under New York law, *see Town of Massena*, 779 N.E.2d at 170; it did not involve or address direct causation in civil RICO actions. *Horn* addressed the question of whether a civil RICO plaintiff may sue for business or property loss resulting from a personal injury; it did not involve an insurer or an insurer's duty to defend. 604 U.S. at 596-97. As Moving Defendants point out regarding *Union Mutual Fire Insurance v. Kolb Radiology, P.C.*, 24-CV-6082 (PKC) (VMS), 2026 WL 621927 (E.D.N.Y. Mar. 5, 2026), and *Union Mutual Fire Insurance v. Citimed Complete Medical Care, P.C.*, 24-cv-06111 (NCM) (VMS), 2026 WL 787869 (E.D.N.Y. Mar. 20, 2026), *see* Moving Defendants' Letter to the Court at 1 (Apr. 7, 2026), Dkt. 306, neither of these two cases involved RICO causes of action. Rather, both matters involved state-law allegations. *Kolb Radiology*, 2026 WL 621927, at *1 (involving common law fraud and unjust enrichment claims under New York law); *Citimed*, 2026 WL 787869, at *1 (involving a common law fraud claim under New York law). Contrary to Plaintiff's assertion that these cases "directly bear on the issue of standing," Plaintiff's Letter to the Court at 2 (Mar. 23, 2026), Dkt. 304, therefore, they do not, in fact, speak to the issue of RICO statutory standing. Further, the Second Circuit's recent decision in *Roosevelt Road Re*, 2026 WL 2108399, confirms, rather than undermines, the Court's analysis. While Plaintiff may not be as far removed as the reinsurers in *Roosevelt Road*, they are still at least two steps beyond the racketeering activity, as explained above. Moreover, as Moving Defendants assert, *see* Moving Defendants' Letter to the Court at 1 (July 27, 2026), Dkt. 316, the Court is not obligated to consider Plaintiff's argumentation proffered outside the bounds of the briefing permitted by the Court, *see, e.g.*, *Laguerre v. Nat'l Grid USA*, 20-3901-cv, 2022 WL 728819, at *5 n.7 (2d Cir. Mar. 11, 2022); *Marcelletti v. GEICO Gen. Ins.*, 6:23-CV-06211 EAW CDH, 2025 WL 1811668, at *14 (W.D.N.Y. July 1, 2025).

**b. Clear-and-Definite Injury**

Additionally, Plaintiff's allegations are flawed with respect to clear-and-definite injury. As mentioned above, RICO standing also requires a plaintiff to assert that "his or her 'actual loss [is] clear and definite.'" *Denney*, 443 F.3d at 266 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-69 (2d Cir. 1994)). The Second Circuit has long held that this requirement is not met "where the net amount of a plaintiff's damages is subject to change." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 232 (E.D.N.Y. 2014); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 136 (2d Cir. 2003) (holding that the plaintiffs' damages were not "clear and definite" where their damages could be reduced due to pending arbitrations concerning "the same underlying transactions" at issue in the RICO action).

To the extent that Plaintiff's alleged damages pertain to *pending*, as opposed to concluded, lawsuits, they are not "clear and definite." Plaintiff claims it incurred three categories of damages: (1) "payments that Plaintiff made to Legal Defendants in the form of settlements due to Defendant's pattern of fraudulent conduct"; (2) "payments Plaintiff made as legal and investigative costs for defending fraudulent lawsuits"; and (3) "payments made as part of settlement which were diverted to Defendant Medical Providers through liens for treatment predicated upon, in whole or in part, the fraudulent reports generated by Defendants." FAC ¶ 440. These damages specifically relate to eight Claimants, and their related personal injury lawsuits, detailed in the FAC: Claimants A-H. *Id.* ¶¶ 233-435. Plaintiff concedes that three of its example Claimants' lawsuits are pending: Claimant A, Claimant B, and Claimant C. *See* FAC ¶¶ 254, 270, 286; *see also* Joint Mot. Opp'n at 14 (failing to respond to Moving Defendants' argument on this point). Because these pending suits concern the same slip-and-fall accidents and, in turn, insurance claims at issue here, such that Plaintiff's potential damages could be decreased by those lawsuits'

resolutions, damages connected to those Claimants are not "clear and definite." *See, e.g.*, *Sky Med.*, 17 F. Supp. 3d at 231-33 (holding that the plaintiff's damages were not "clear and definite" where "some of the no-fault claims that form[ed] the basis of plaintiff's RICO causes of action [were] still being litigated in state court or arbitration").

Plaintiff fails to allege the status of the lawsuit relating to Claimant D. *See* Joint Motion at 7; FAC ¶¶ 287-306; Joint Mot. Opp'n at 14. Instead, the FAC simply refers to court filings in what otherwise appears to be an ongoing matter. FAC ¶¶ 303-06. Although Moving Defendants raise this deficiency in their Joint Motion, *see* Joint Mot. at 7, Plaintiff fails to respond directly in its opposition, asserting, instead, that it is "undisputed that five of the eight exemplars *are* sufficiently ripe," Joint Mot. Opp'n at 14. This assertion, however, is a legal conclusion unsupported by facts in the FAC. Thus, Plaintiff has not plausibly asserted clear-and-definite damages regarding Claimant D either.

Plaintiff attempts to circumvent this conclusion by arguing that, "if damages are ongoing and presently being incurred, they can be refined later through supplement." Joint Mot. Opp'n at 14 (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988)). In doing so, Plaintiff points to the remaining Claimants, Claimants E-H, whose related lawsuits the FAC asserts have settled. Joint Mot. Opp'n at 14; FAC ¶¶ 328, 356, 397, 435.

While it is generally true that a "trial court may, of course, permit supplementation of the complaint to allow for damages of this type suffered up to the time of trial," *Bankers Tr.*, 859 F.2d at 1106, the case upon which Plaintiff depends, *Bankers Trust*, simultaneously holds that "legal fees may constitute RICO damages *when they are proximately caused by* a RICO violation." *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993) (emphasis added) (discussing *Bankers Trust*'s holding); *see Bankers Tr.*, 859 F.2d at 1105. Thus, while in theory,

legal fees directly caused by racketeering activity could be recoverable, Plaintiff has not established statutory causation for the reasons discussed above.[13]

Accordingly, Plaintiff's Section 1962(a), Section 1962(c), and Section 1962(d) claims are dismissed.

**2. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's Remaining State-Law Claims.**

Moving Defendants urge the Court not to exercise supplemental jurisdiction over the FAC's state-law claims; however, if the Court were to consider these claims, the Moving Defendants assert that the FAC fails to plausibly state claims for relief. *See* Joint Mot. at 26-30. Plaintiff counters that because it has sufficiently pled its federal claims, the Court should exercise supplemental jurisdiction over its state-law claims; but even if the Court were to dismiss its federal causes of action, it has sufficiently alleged its state-law claims. *See* Joint Mot. Opp'n at 27-30.

Although 28 U.S.C. § 1367(a) vests district courts with supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(c)(3) enables district courts to "decline to exercise supplemental jurisdiction" where they have "dismissed all claims over which [they have] original jurisdiction." Because this Court has dismissed the RICO claims over which

[13] Moving Defendants contend that Plaintiff's "legal and investigative costs" are not recoverable. Joint Mot. at 8. However, its arguments on this point are unpersuasive. *All. for Hippocratic Medicine*, 602 U.S. 367, which Moving Defendants cite for the proposition that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action," Joint Mot. at 8-9 (quoting *All. for Hippocratic Med.*, 602 U.S. at 394), relates to constitutional, not statutory, standing, *see All. for Hippocratic Med.*, 602 U.S. at 394 (discussing the injury in fact requirement for constitutional standing, which involves a standard different from the clear-and-definite injury requirement required for RICO standing). *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006), and *Capasso v. CIGNA Insurance*, 765 F. Supp. 839 (S.D.N.Y. 1991), also do not compel a contrary conclusion. Both *Hollander* and *Capasso* involved findings that the plaintiffs had not established the element of proximate causation. *Hollander*, 340 F. Supp.2d at 459-62; *Capasso*, 765 F. Supp. at 842. They did not explicitly say that legal and investigative costs are not recoverable when proximately caused by racketeering activity and, in any case, the Second Circuit "explicitly ruled" as such in *Bankers Trust*. *Stochastic Decisions*, 995 F.2d at 1167 (distinguishing *Capasso*).

it has original jurisdiction, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state-law claims. *See* FAC ¶¶ 477-524 (common-law fraud, aiding-and-abetting fraud, unjust enrichment, New York State General Business Law § 349, and attorney misconduct under New York State Judiciary Law § 487).

Accordingly, Plaintiff's state-law claims are dismissed without prejudice.

**C. Plaintiff's Request for Leave to File a Second Amended Complaint or Supplemental Pleading Is Denied.**

Finally, having granted Moving Defendants' Motions to Dismiss, the Court considers Plaintiff's request for leave to file a second amended complaint or supplemental pleading. *See* Joint Mot. Opp'n at 27; Plaintiff's Letter to the Court at 1-3 (June 26, 2026), Dkt. 313.[14] In response to Plaintiff's request, Moving Defendants respond that the Court should deny leave to amend because Plaintiff "is a sophisticated insurer represented by counsel, with access to its own claim files and court records on which it affirmatively relies, and it has already had the benefit of an amended pleading." Joint Mot. Reply at 1 n.2.

Amendments to a pleading before trial are governed by Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"), which provides:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course no later than:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

[14] Plaintiff's motion to withdraw its earlier filed letter to the Court, *see* Plaintiff's Letter to the Court (June 26, 2026), Dkt. 312; Plaintiff's Letter to the Court (June 19, 2026), Dkt. 311, is granted.

FED. R. CIV. P. 15(a)(1)-(2). Plaintiff has already amended its Complaint once as a matter of course, *see* FAC, and Defendants do not consent to Plaintiff amending the complaint a second time.

While courts "should freely give leave" to amend "when justice so requires," FED. R. CIV. P. 15(a)(2), this principle is not without limits, *see Garrand Bros. LLC v. Am. Honda Motor Co.*, 23-7343-cv, 2024 WL 4691004, at *3 (2d Cir. Nov. 6, 2024) ("While leave to amend should generally be "freely given," there is no rule that every request to amend must be granted." (citations omitted)). Where a party has failed to specify "how amendment would cure the pleading deficiencies in its complaint," leave need not be given. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

To the extent that Plaintiff seeks leave to amend under Rule 15(a)(2), the Court denies such leave for futility. Plaintiff requests leave to amend "[i]n the event such claims were to be dismissed." Joint Mot. Opp'n at 27. Yet, Plaintiff has failed to identify any additional facts or legal theories that it might assert in a second amended complaint if given leave to amend, beyond stating that it would try "to correct such claims" and assert this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Joint Mot. Opp'n at 27. This is not enough. *See, e.g.*, *TechnoMarine*, 758 F.3d at 506 (affirming the district court's denial of leave to amend where the plaintiff "already amended its complaint once" and "entirely failed to specify how it could cure its pleading deficiencies"); *City of Pontiac Policemen's & Firemen's Ret. Sys.*, 752 F.3d 173, 188 (2d Cir. 2014) (same). Moreover, Plaintiff does not explain, nor does the Court discern, a connection between the two cited filings and the key issue of statutory RICO standing, analyzed above. *See, e.g.*, *Yerkyn v. Yakovlevich*, 164 F.4th 224, 229-32 (2d Cir. 2026) (affirming the district court's denial of leave to amend as futile where the plaintiff "failed to plead and prove a domestic injury

under RICO"); *Roosevelt Rd. Re, Ltd. v. Subin*, 24-CV-05033 (HG), 2025 WL 3049937, at *2-4 (E.D.N.Y. Sep. 16, 2025) (denying the plaintiffs leave to amend where their proposed second amended complaint exceeded the "narrow proximate-cause defect" identified by the Court in an earlier motion-to-dismiss decision), *aff'd*, 25-2560, 2026 WL 2108399 (2d Cir. July 22, 2026).

Plaintiff's request to file a supplemental pleading does not compel a different conclusion. In support of its motion to file a supplemental pleading, Plaintiff draws the Court's attention to two public documents filed on other courts' dockets after the FAC: (1) a declaration filed by "former non-physician Managing Director of All Boro Medical Rehabilitation PLLC" on June 17, 2026, in a case before the New York State Supreme Court, New York County, Index No. 151766/2026, and (2) bank records filed in an U.S. District Court for the Southern District of New York action, 1:23-CV-09100 (LJL) (GS).[15] Plaintiff's Letter to the Court at 1-2 (June 26, 2026), Dkt. 313. Recognizing that a "Second Amended Complaint would supersede" the FAC, thereby "mooting the fully-submitted motions" and necessitating "a renewed Rule 12 round across the numerous defendants in this action . . . despite the Court's time already spent on reviewing the same," Plaintiff indicates its preference to proceed by supplemental pleading under Federal Rule of Civil Procedure 15(d) ("Rule 15(d)"). *Id.* at 2-3.

To the extent that Plaintiff seeks leave to file a supplemental briefing under Rule 15(d), the Court denies this request. Under Rule 15(d),

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or

[15] Plaintiff initially filed a letter seeking virtually identical relief on June 19, 2026. *See* Plaintiff's Letter to the Court (June 19, 2026), Dkt. 311. However, purportedly due to a dispute with Defendant Jose Hernandez regarding an additional document Plaintiff had initially sought to bring to the Court's attention, Plaintiff filed a letter with the consent of Defendant Jose Hernandez asking the Court to deem the letter withdrawn. *See* Plaintiff's Letter to the Court (June 26, 2026), Dkt. 312. The June 19, 2026, letter is accordingly withdrawn.

> defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

As with amendments under Rule 15(a)(2), the filing of supplemental pleadings under Rule 15(d) is "addressed to the discretion of the court." 6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1504 (3d ed. 2026); *see Farmer v. Brennan*, 511 U.S. 825, 846 (1994). "Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995). As discussed above, Plaintiff's proposed supplemental pleading does not address the fundamental defect identified by the Court, statutory RICO standing. *See, e.g. Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 65 (2d Cir. 2004) (affirming the district court's denial of leave to file a Rule 15(d) supplemental complaint where doing so would be futile in light of a failure to state a ripe RICO claim).[16]

Accordingly, Plaintiff's request for leave to amend the FAC and to file a supplemental pleading is denied.

**CONCLUSION**

For the foregoing reasons, Moving Defendants' Motions to Dismiss are granted in part and denied in part. To the extent that Moving Defendants seek dismissal for lack of constitutional standing, their motions are denied, and to the extent that Moving Defendants seek dismissal for lack of statutory standing, their motions are granted.

---

[16] Plaintiff alternatively asks this Court to take judicial notice of the same three filings listed above. Plaintiff's Letter to the Court at 3 (June 26, 2026), Dkt. 313. As recognized by Plaintiff, *see id.*, however, the Court's Rule 12(b)(6) analysis is limited to the allegations contained within the four corners of Plaintiff's FAC, *see Pani*, 152 F.3d at 71, and it may not take judicial notice of matters asserted in another litigation for their truth, *see, e.g.*, *Fecteau v. City of Mount Vernon*, 23 Civ. 09173 (KMK)(JCM), 2025 WL 1664211, at *3 (S.D.N.Y. June 11, 2025). Taking judicial notice solely of the fact of these filings, however, and not their truth, has no bearing on critical issue of statutory RICO standing.

Plaintiff's request to withdraw its initial letter-motion regarding its second amended complaint or supplemental briefing is granted, *see* Plaintiff's Letter to the Court (June 26, 2026), Dkt. 312, and its initial letter-motion, *see* Plaintiff's Letter to the Court (June 19, 2026), Dkt. 311, is hereby stricken.

Plaintiff's motion for leave to file a second amended complaint or supplemental briefing is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

August 14, 2026
Brooklyn, New York